## GREGORY V. BARTLETT.

Decided October 24, 1891.

1. *Overdue tax suit—Jurisdiction.*

Where, on the filing of a complaint in an overdue tax suit, the clerk failed to enter the warning order on the record as required by the statute, the court acquired no jurisdiction, and the proceedings are void, although the order was duly published

2. *Jurisdiction—Recitals of decree.*

Where the statute requires a warning order to appear of record, no presumption in favor of the record will be indulged in its absence, although the decree recites that proper notice was given.

3. *Jurisdiction—Nunc pro tunc order.*

The failure of the clerk to enter the warning order on the record cannot be cured, after the decree has been executed, by causing such order to be entered on the record as of the date of the filing of the complaint.

4. *Tax sale—Subrogation.*

A purchaser at a void overdue tax sale is subrogated to the State's lien for all taxes paid by him.

APPEAL from *Pulaski* Chancery Court.

DAVID W. CARROLL, Chancellor.

Minor Gregory brought ejectment against Liberty Bartlett, claiming title by purchase at an overdue tax sale. On defendant's motion the cause was transferred to the chancery court. Defendant filed an answer which he asked to be taken as a cross-bill and in which he questioned the validity of the overdue tax proceeding.

From the transcript of the record in the overdue tax suit against the land in controversy it appears that the complaint was filed on May 31, 1881, and on March 18, 1882, final decree was entered, condemning the land to be sold for overdue taxes. It does not appear that the order required by section 2 of the overdue tax act was entered on the record by the clerk, though it was duly published. The final decree, however, recites that, on the filing of the complaint in this action, the clerk entered on the records of the court an order that all persons having any right or interest in the lands mentioned and described in the complaint should

appear within forty days from the date of said order, and show cause why a lien should not be declared on said lands for taxes due and unpaid thereon, and why the said lands should not be sold for the non-payment thereof. On August 1, 1887, a *nunc pro tunc* order was made reciting that the order aforesaid was, " by misprision of the clerk," omitted to be entered of record, and directing its entry as of the date of May 31, 1881.

The court decreed that the overdue tax sale be annulled and defendant's title quieted, but allowed plaintiff no re-imbursement for taxes paid on the land. Plaintiff has appealed.

*U. M. & G. B. Rose* for appellant.

1. Nothing can be inquired into in this cause save the jurisdiction of the court that rendered the overdue tax decree. 49 Ark., 336; 50 *id.*, 188; 49 *id.*, 416; 40 *id.*, 42; 20 *id.*, 583; 44 *id.*, 411; *ib.*, 267. If the court acquired jurisdiction, its decree cannot be collaterally attacked. *Ib.*

2. By misprision of the clerk, the order required by section 2 of the overdue tax law was omitted. This was supplied by *nunc pro tunc* entry. The power to make its records speak the truth is inherent in the court. 4 Ark., 591; 9 *id.*, 185; 17 *id.*, 100; 25 *id.*, 214; 31 *id.*, 194; 35 *id.*, 118; *ib.*, 278; *ib.*, 583. The order made on the filing of the complaint is a mere formality preliminary to the publication of the warning order. It is not *jurisdictional.*

3. The court failed to give appellant a lien for the taxes settled by his purchase money.

*P. C. Dooley* for appellee.

1. In these special proceedings the court can only acquire jurisdiction by *filing* the complaint and. by publication of the order required by section 2. *The making* and publication of this order are jurisdictional facts which must appear of record. Black, Tax Titles, p. 223; 12 Ala., 617; Cooley, Tax., 337; 6 Yerger, 22; 3 Johns. Cases, 1 and 7. There is no record or evidence that the order required by section 2 was made. A *nunc pro tunc* order can only be made

*after due notice,* and then only to show what was *actually done.* In this case no order was ever made, and there was nothing to be supplied. Freem., Judg., 68 ; 1 Wall., 627 ; 18 Me., 183 ; 10 Mo., 359 ; 45 Mo., 171 ; Mansf. Dig., sec. 3909 ; 24 Ill., 295 ; 18 Penn. St., 148 ; 34 Ark., 300 ; 46 Wis., 363.

2. No claim was made by the plaintiff for the sum he paid, and no return thereof or lien therefor is asked, and no proof of payment made.

COCKRILL, C. J. The second section of the act of 1881 for the enforcement of payment of overdue taxes by fore-closure in equity, upon a complaint filed for that purpose, is as follows :

" On the filing of such complaint, the clerk of the court shall enter on the record an order, which may be in the following form :

" State of Arkansas on relation of ———, plaintiff, v. Certain lands on which taxes are alleged to be due, defendant.

" Now, on this day came said plaintiff, and files here in court his complaint, in which he sets forth that there are certain taxes due on the following lands :

[Here insert a description of the lands.]

" Now, therefore, all persons having any right or interest in said lands, or any of them, are required to appear in this court within forty days from this date, then and there to show cause, if any they can, why a lien should not be declared on said lands for unpaid taxes, and why said lands shall not be sold for non-payment thereof." (Acts 1881, p. 65.)

The act then directs the clerk who makes the order to cause a copy of it to be published at once in a newspaper published in the county, or, if there is no such newspaper, to post a copy of the order at the court-house door, and provides that such publication shall be taken as notice to the world of the contents of the complaint in the cause. No other provision for notice to the land owner is made.

The question at the threshold of this cause is this: Will the publication of the warning order in the statutory form, without the order therefor being previously made by the clerk as required by the second section, give the court jurisdiction to condemn the lands? If the court had not jurisdiction to condemn the lands, the decree upon which Gregory's title rests is a nullity, his title fails, and he cannot recover the possession.

*1. When jurisdiction in overdue tax suit attaches.*

We are not embarrassed by the consideration of the question whether jurisdiction to sell may not be acquired by seizure of lands without other notice, as was indicated in *Feild* v. *Dortch*, 34 Ark., 399. Under the act in question no actual seizure is contemplated, and there is nothing for the jurisdiction of the court to rest upon except the notice by publication. *McCarter* v. *Neil*, 50 Ark., 188.

Without the statutory notice, therefore, there can be no jurisdiction. If the clerk makes the warning order, as the second section of the act requires, but fails to publish or post it, and that fact appears in the judgment record, there could be no justifiable pretence of jurisdiction. If he publishes the statutory warning without first making the order required by section 2, the question is, does he make a legal publication? In other words, is he authorized by the statute to make publication when there is no previous order of record? If he is not so authorized, then the publication is without authority and is not legal notice to the owner of the land.

In *Anderson* v. *Coburn*, 27 Wis., 558, it was ruled that publication made before, when the statute authorized it only after, filing the complaint, was no publication because it was unauthorized. To the same effect is *Ellis* v. *Fletcher*, 40 Mich., 321. In ordinary attachment proceedings against non-residents, publication without seizure does not give jurisdiction, because the statute requires the seizure as a prerequisite to publication. In Michigan, a warning order was authorized to be published within thirty days from a given time, and one published after that time was held to be with-

s c—3

out authority and to confer no jurisdiction. *Millar* v. *Bab-cock*, 29 Mich., 526. In Iowa, the statute required that an order for a warning order should be made by the court or judge where the suit was brought, or by the county judge. A publication made in pursuance of an order made by the clerk was held to be without authority and void. *Bards-ley* v. *Hines*, 33 Iowa, 157.

These cases are illustrative of the rule that an unauthorized publication is, in legal effect, no publication. Now, as a prerequisite of the clerk's authority to publish a warning order in the class of cases under consideration, he must make an order setting forth facts material for the land owner to know, by entry upon the records of the court. When this requirement of the statute is complied with, it furnishes to the owner of delinquent lands a means of information which the statute designed he should receive. Searching the records and finding no order for a proceeding against his land, he had a right to presume that none existed. There is nothing in the statute to indicate that the legislature considered the entry of the order upon the record as of any less significance than the publication of it. In a section of the act where a form of a decree to be entered is given, it is made to recite that the order was entered of record as well as that it was published; and the requirement as to publication is that a copy of the record entry shall be published. The order is the sole authority for the publication, and the evidence of it which the statute requires is the record entry. *Galpin* v. *Page*, 18 Wall., 372-3.

The statute does not authorize the clerk to make the order in any manner other than by entry on the record, and authorizes publication of nothing except a copy of the record. To say that the clerk can dispense with the record and make his entry in the first instance in a newspaper, would be to disregard a plain provision of the statute and dispense with one of the means the law affords for imparting information to the land owner. But when a statutory provision is plain, and is made to aid in the accomplishment

of a useful end, it cannot be treated as merely directory, and so be disregarded. Especially does that rule apply to proceedings where publication is relied upon as a substitute for personal service. *Bush* v. *Visant*, 40 Ark., 124; *Brodie* v. *Skelton*, 11 Ark., 120.

It follows therefore that publication in a tax proceeding where there has been no previous order of record authorizing it, is no publication and confers no jurisdiction upon the court to sell lands.

The contention that the court has passed upon the sufficiency of the notice by the rendition of the deree, and that the mistake was an error in the exercise of jurisdiction, to be taken advantage of only in a direct proceeding, is untenable, because, until the foundation had been laid for the issue and execution of process, the jurisdiction of the court had not attached for any purpose. No process was ever issued in the cause in which the challenged decree was rendered; the court's determination of any question was therefore *coram non judice* and binding upon no one. The case is unlike that of *Scott* v. *Pleasants*, 21 Ark., 365. The decree in that case, which was attacked collaterally, was obtained in a proceeding to quiet title to land, where, as in the case under consideration, the only notice was by publication. But in that proceeding an order of publication was issued and published in the manner directed by the statute, and the only defect was the manner in which the proof of pubcation was made. The court having acquired jurisdiction by the issue and publication of process, the admission of improper testimony to prove the facts was an error in the exercise of jurisdiction. It was held therefore that the decree was impervious to collateral attack. It was not a case where there was no process and no service, but a case of defective return upon good process. The distinction is pointed out and sustained in *Webster* v. *Daniel & Straus*, 47 Ark., 131.

The recital of the decree that there was proper notice to the parties in interest is not conclusive of that fact, but must 

2. **Effect of** recital of decree.

be read in connection with that part of the record which gives, or is required to give, the official evidence of jurisdiction, as prescribed by statute. *Boyd* v. *Roane,* 49 Ark., 397; *Settlemier* v. *Sullivan,* 97 U. S., 444; *Galpin* v. *Page,* 18 Wall., *sup.*

If such evidence is not required by the statute to be placed upon the record and the record recites, or is silent as to, the facts necessary to show jurisdiction, their existence will be presumed; but no presumptions are indulged when the evidence is stated upon the record (*Boyd* v. *Roane,* 49 Ark., *sup.*), or where the statute requires the jurisdictional facts to appear of record and they are not made so to appear. *Applegate* v. *Mining Co.,* 117 U. S., 255; *Galpin* v. *Page* 18 Wall., *sup.*

The statute under consideration requires the order which authorized the publication to appear of record. There is no evidence of it in the transcript, which purports to be a complete record of the proceedings in the overdue tax case. As the statute requires the order to appear of record, and it does not, no presumptions in its favor are indulged. *Galpin* v. *Page,* 18 Wall., *sup.*

3. **Want of jurisdiction not cured by** *nunc pro tunc* **or.er.** The court undertook to cure the defect in the overdue tax proceeding, several years after the decree had been executed, by causing the order required by section 2 of the overdue tax act to be entered upon the record as of the date of the filing of the complaint. The *nunc pro tunc* order recites that the court found that the clerk had failed to enter the order of record, as the statute requires. This order, if it has any effect upon the decree, is an affirmative showing that no foundation was ever laid for the issue of the substituted process by publication, for the court finds that no order which would authorize the publication was ever made. The defect was jurisdictional, and the void proceeding could not in any event be made good by amendment. The validity of the decree depends upon the jurisdiction of the court before it was rendered, not upon what occurred subsequently. If the order for publication had been previously

entered by the clerk and lost or destroyed, the court might have caused it to be replaced upon the record. That is not what was done, but the attempt was to compel or allow the clerk to do by retroaction what the law required to be done at a previous time, but which had not been done. That is not the province of a *nunc pro tunc* order. *Cox* v. *Gress*, 51 Ark., 224. The latter order added nothing to the validity of the decree.

The judgment of the court annulling the decree and awarding possession of the land to Bartlett is right. But Gregory has an equity to be reimbursed. The amounts paid by him, whether upon his purchase or for subsequent taxes, as far as they have relieved the land of a burden, have inured to its benefit. He is therefore subrogated to the rights of the liens he has discharged, and should have a decree therefor. Such is the effect of the decisions in *Meher* v. *Cole*, 50 Ark., 361; *Bagley* v. *Castile*, 42 Ark., 77; and *Hershey* v. *Thompson*, 50 Ark., 484.

*4. Tax purchaser subrogated to State's lien.*

The decree quieting Bartlett's title to the land is affirmed; otherwise it is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

